## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| OTTAWA NORTHERN RAILROAD, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | |
| v. | ) | No. 23-2363-KHV |
| | ) | |
| CITY OF BALDWIN, KANSAS, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On August 21, 2023, Ottawa Northern Railroad, LLC filed suit against five defendants: the City of Baldwin City, Kansas, Calvin Reed in his official capacity as Secretary of the Kansas Department of Transportation ("KDOT"), J. Warren Company, Inc., Bettis Asphalt & Construction, Inc. and BG Consultants, Inc., alleging that defendants violated its rights as a common railway carrier by impermissibly entering its land and performing construction services thereon.[1]  In Count I, Ottawa Northern sought a preliminary injunction to enjoin defendants from performing further construction upon the property.[2]  In Count II, Ottawa Northern seeks a declaratory judgment that (1) defendants must abide by Ottawa Northern's rules for entry on the property and (2) federal law preempts the agreements which defendants claim authorize entry, and that the agreements are otherwise invalid and unenforceable.  In Count III, Ottawa Northern brings

---

[1]     On November 7, 2023, the Court sustained in part Ottawa Northern's Motion For Default Judgment Against Defendant J. Warren Co., Inc.  (Doc. #42) filed October 11, 2023.  The Clerk has therefore entered default against J. Warren Company, Inc. on the claims set forth in Ottawa Northern's complaint.  Memorandum And Order (Doc. #59); Clerk's Entry Of Default (Doc. #60).

[2]     On October 30, 2023, Ottawa Northern withdrew without prejudice its Motion For Preliminary Injunction (Doc. #5) filed  August 21, 2023.  See  Minute Entry  (Doc. #56). Accordingly, the Court does not address that portion of Ottawa Northern's complaint.

a claim of trespass under Kansas law, alleging that defendants caused damage and entered its property without authorization.

This matter comes before the Court on the <u>Motion To Dismiss Of Defendant Calvin Reed In His Capacity As Secretary Of The Kansas Department Of Transportation</u> (Doc. #13) filed September 11, 2023, <u>Defendant, The City Of Baldwin City, Kansas' Motion To Dismiss</u> (Doc. #18) filed September 15, 2023, <u>Motion To Dismiss For Failure To State A Claim By Defendant Bettis Asphalt & Construction, Inc.</u> (Doc. #21) filed September 19, 2023 and the <u>Motion To Dismiss For Lack Of Jurisdiction And Memorandum In Support</u> (Doc. #24) filed September 19, 2023.

For reasons stated below, the Court sustains in part and overrules in part the motions by Reed and Baldwin.  The Court overrules the motions by Bettis Asphalt and BG Consultants.

## <u>Legal Standards</u>

Defendants seek to dismiss plaintiff's complaint for lack of subject matter jurisdiction under Rule 12(b)(1), Fed. R. Civ. P., and failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P.

## I.     **Rule (12)(b)(1) - Subject Matter Jurisdiction**

Federal courts are courts of limited jurisdiction.  <u>Marcus v. Kan. Dep't of Revenue</u>, 170 F.3d 1305, 1309 (10th Cir. 1999) (quoting <u>Penteco Corp.—1985A v. Union Gas Sys., Inc.</u>, 929 F.2d 1519, 1521 (10th Cir. 1991)).  Therefore, the law imposes a presumption against jurisdiction. <u>Basso v. Utah Power & Light Co.</u>, 495 F.2d 906, 909 (10th Cir. 1974).  The Court may exercise jurisdiction only when specifically authorized to do so, <u>see</u> <u>Castaneda v. INS</u>, 23 F.3d 1576, 1580 (10th Cir. 1994), and must dismiss a claim if it becomes apparent at any stage of the proceedings that it lacks jurisdiction, <u>Scheideman v. Shawnee Cnty. Bd. Of Cnty. Comm'rs</u>, 895 F. Supp. 279,

280 (D. Kan. 1995) (citing Basso, 495 F.2d at 909); Fed. R. Civ. P. 12(h)(3).  Plaintiff bears the burden of showing that jurisdiction is proper, see Scheideman, 895 F. Supp. at 280, and must demonstrate that the case should not be dismissed, see Jensen v. Johnson Cnty. Youth Baseball League, 838 F. Supp. 1437, 1439–40 (D. Kan. 1993).  Conclusory allegations of jurisdiction are not enough.  United States v. Spectrum Emergency Care, Inc., 190 F.3d 1156, 1160 (10th Cir. 1999).

Rule 12(b)(1) motions generally take the form of facial attacks on the complaint or factual attacks on the accuracy of its allegations.  Holt v. United States, 46 F.3d 1000, 1002–03 (10th Cir. 1995) (citing Ohio Nat'l Life Ins. Co. v. United States, 922 F.2d 320, 325 (6th Cir. 1990)).  In a facial challenge to subject matter jurisdiction, the Court must accept the allegations of the complaint as true and may not consider evidence outside the complaint.  Stuart v. Colo. Interstate Gas Co., 271 F.3d 1221, 1225 (10th Cir. 2001).  By contrast, if the defendant lodges a factual attack, "a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends."  Holt, 46 F.3d at 1002.  Courts have wide discretion to allow affidavits, other documents and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1).  See id.

A.     Eleventh Amendment Sovereign Immunity

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.  The Eleventh Amendment grants immunity that "accord[s] states the respect owed them as joint sovereigns," "applies to any action brought against a state in federal court, including suits initiated by a state's own citizens" and "applies regardless of whether a plaintiff

seeks declaratory or injunctive relief, or money damages." Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1252 (10th Cir. 2007) (citations omitted).

Federal courts cannot exercise either diversity or federal question jurisdiction over a state when Eleventh Amendment sovereign immunity is asserted. Seminole Tribe v. Florida, 517 U.S. 44, 54 (1996). Arguments of sovereign immunity and subject matter jurisdiction are inextricably intertwined and sovereign immunity is therefore a matter of subject matter jurisdiction. Hartman v. Golden Eagle Casino, Inc., 243 F. Supp. 2d 1200, 1202 (D. Kan. 2003) (citing E.F.W. v. St. Stephen's Indian High Sch., 264 F.3d 1297, 1302 (10th Cir. 2001)).

## II.      Rule 12(b)(6) - Failure To State A Claim

In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement for relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing its claims with enough factual matter to suggest that it is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have

acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability.  Id. (quoting Twombly, 550 U.S. at 557).  A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand.  Id.  Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief.  Id. at 679.  The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case.  Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008).

## **Factual Background**

Plaintiff's complaint alleges as follows:

Ottawa Northern is a Mississippi limited liability company.  It operates a railroad in Kansas which runs from Ottawa to Baldwin City.  The line interchanges with the BNSF Railway, which runs between Los Angeles, California and Chicago, Illinois.  Ottawa Northern is wholly owned by Chicago Rock Island & Pacific Railroad, LLC, which is also a Mississippi LLC.  On March 9, 2023, Ottawa Northern purchased the assets of Midland Railway Historical Association, including the real property at issue in this case.

Before Ottawa Northern purchased Midland's assets, Midland had entered into two agreements: the Trail Easement Agreement and the Construction Agreement.[3]  The Trail Easement Agreement dated April 3, 2018, between Midland and Baldwin, granted Baldwin an easement on

---

[3]     See Trail Easement Agreement (Doc. #1-6); Construction Agreement (Doc. #1-7). Ottawa Northern's complaint refers to the Construction Agreement as the "Agreement," while defendants refer to it as the "Construction Agreement."  To avoid confusion, the Court adopts defendants' use of the term "Construction Agreement."  See Construction Agreement (Doc. #1-7).

Midland's property to construct a paved trail and install specified utilities.[4]  On April 25, 2022, Midland entered into a Construction Agreement for Baldwin and KDOT to construct a ten-foot-wide concrete path on part of Midland's property that is purportedly subject to the Trail Easement Agreement.  The Construction Agreement states that it is binding on Midland's successors and assigns.

In July of 2023, Ottawa Northern discovered that contractors had entered a portion of its land to install the walking trial, storm sewers and related facilities and utilities.  When asked, the contractors claimed to be working on behalf of Baldwin and KDOT.  The construction appeared to include borings, trenching, flex tubing and the addition of water shedding concrete.[5]  These activities present serious safety risks to the public, the structural integrity of the railbed and Ottawa Northern's operation of the railroad.

Before outside parties may enter and perform construction on its railroad property, Ottawa Northern requires them to apply for Right of Entry ("ROE") permits at least 30 days in advance. Defendants did not apply for ROE permits before they entered the property.  ROE permits are intended to protect the public from unauthorized work on railroad property, because such work can cause derailments, train collisions and damage to railroad facilities and nearby properties.  To obtain an ROE permit, outside parties must (1) pay an application/administrative fee, (2) enter into a ROE Agreement with Ottawa Northern, (3) provide proof of insurance, (4) comply with federal railroad administration and railroad rules, including Ottawa Northern's flagging tariff and

---

[4]      In exchange for the easement, the Trail Easement Agreement required Baldwin to make two payments of $172,500 and provide annual utility credits to Midland.

[5]      Published plans for the work include the construction of storm sewers, which the Trail Easement Agreement prohibits.

(5) comply with Ottawa Northern's Utility Accommodation Policy.  In addition, Ottawa Northern must grant authorization for any digging or excavation on railroad property.

The Construction Agreement required defendants to (1) comply with the permit requirements of Midland, its successors and assigns, (2) provide proof of insurance, (3) before commencing construction work, give ten working days written notice (also, specifically, 72 hours notice to the Railroad Engineer of Midland's successor or assigns) and (4) immediately terminate work if "in [Ottawa Northern's] reasonable opinion" the work endangers the safety of the railroad's operation.  Defendants did not comply with these provisions of the Construction Agreement.

On July 5, 2023, Ottawa Northern sent emails to BG Consulting and Bettis Asphalt instructing them to cease their unauthorized entry on its property and terminate construction.  BG Consulting and Bettis Asphalt refused to do so.  Ottawa Northern also instructed KDOT to cease the construction work, but KDOT refused to do so.  Defendants continue to ignore Ottawa Northern's instructions to cease and desist.

## Analysis

Defendants have filed four motions to dismiss.  Each defendant argues that the Court lacks both diversity jurisdiction and federal question jurisdiction.  In his official capacity, Reed and Baldwin raise additional grounds for dismissal based on lack of jurisdiction.  Reed argues that Eleventh Amendment sovereign immunity bars Ottawa Northern's suit against him, and Baldwin argues that Ottawa Northern failed to comply with the notice requirement of the Kansas Tort Claims Act ("KTCA"), K.S.A. § 12-105b(d).  All four defendants contend that the Court should dismiss Ottawa Northern's claims for failure to comply with the registration requirement for out-of-state LLCs under K.S.A. § 17-76,126 and failure to state a claim upon which relief can be granted under Rule 12(b)(6).

## I.      Subject Matter Jurisdiction

In its complaint, Ottawa Northern invokes diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to 28 U.S.C. § 1331.  Defendants ask the Court to dismiss all claims for lack of subject matter jurisdiction.  In his official capacity, Reed also requests dismissal on the ground that the state has not waived its Eleventh Amendment sovereign immunity. Baldwin separately seeks dismissal because Ottawa Northern did not comply with KTCA notice requirements.

### A.      Diversity Jurisdiction

Ottawa Northern alleges that the Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because all defendants are residents of Kansas, Ottawa Northern is a resident of Mississippi and the amount in controversy exceeds $75,000.  Defendants argue that Ottawa Northern has failed to allege complete diversity because as an LLC, Ottawa Northern is required to allege the citizenship of its own members and the citizenship of the members of its owner, the Chicago Rock Island & Pacific Road, LLC.  In his official capacity, Reed also argues that the Court should dismiss him because KDOT is not a citizen for purposes of diversity jurisdiction.

#### 1.      Failure To Plead Diversity Of Limited Liability Companies

Defendants argue that Ottawa Northern failed to allege complete diversity because, as an LLC, it is required to allege the citizenship of its own members and the members of its owner, the Chicago Rock Island & Pacific Road, LLC.  The complaint summarily alleges that Ottawa Northern and Chicago Rock Island & Pacific Road, LLC are Mississippi LLCs.  For purposes of diversity jurisdiction, the citizenship of an LLC is determined by that of its members.  Siloam Springs Hotel, L.L.C. v. Century Sur. Co., 781 F.3d 1233, 1234 (10th Cir. 2015); see also Pentair Flow Techs., LLC v. L.I. Dev. Kansas City, LLC, No. 22-2241-JAR, 2022 WL 2290532, at *1 (D.

Kan. June 24, 2022) (to establish diversity with respect to LLC, plaintiff must identify its members and their citizenship and trace citizenship of any other members "through however many layers may exist.").

Although Ottawa Northern's complaint did not identify the members of its owner LLC, it presented evidence at the preliminary injunction hearing on September 26, 2023 that its owner's sole member is a Mississippi citizen. Ottawa Northern argues that this testimony satisfies its burden to establish diversity jurisdiction. In reviewing defendants' motions to dismiss, however, the question is whether the Court may consider such evidence. When reviewing a *factual* attack on subject matter jurisdiction, the Court has wide discretion to allow affidavits and other documents and conduct a limited evidentiary hearing. See Stuart, 271 F.3d at 1225; Holt, 46 F.3d at 1002. Defendants' argument, however, represents a *facial* attack on the jurisdictional allegations; it solely questions the sufficiency of the complaint.

The Court finds no authority for the proposition that it may consider Ottawa Northern's testimony in reviewing defendants' facial attack on the diversity allegations of plaintiff's complaint. Ottawa Northern has not formally moved to amend its complaint under Rule 15, Fed. R. Civ. P., but it apparently can cure the defect by amendment. See Plaintiff's Memorandum In Opposition To Defendants' Motion To Dismiss (Doc. #37) filed October 2, 2023 at 4. Because dismissal of this action would be without prejudice, the Court, in its discretion and consistent with 28 U.S.C. § 1653, grants Ottawa Northern leave to amend its complaint to cure the deficiency of the jurisdictional allegations. See Polaski v. Colo. Dep't of Transp., 198 Fed. App'x. 684, 686 (10th Cir. 2006) (dismissal for lack of subject matter jurisdiction must be without prejudice). Ottawa Northern must file any amended complaint no later than 5:00 PM on November 22, 2023.

If Ottawa Northern does not file an amended complaint, defendants may renew their motions, and the Court may grant such a motion without further notice.

      2.      Diversity Of Calvin Reed, In His Official Capacity

In his official capacity, Reed argues that the Court lacks subject matter jurisdiction over Ottawa Northern's claims against him because KDOT, as a governmental entity, is not a citizen for purposes of diversity jurisdiction and a suit against a government official in his official capacity is akin to suing the governmental entity itself. Ottawa Northern does not directly refute Reed's argument. Rather, Ottawa Northern responds that even if the Court finds that Reed is a non-diverse party, the Court may still exercise federal question jurisdiction.

States are not "citizens" for purposes of diversity jurisdiction. See Moor v. Alameda Cnty., 411 U.S. 693, 717 (1973). The same is true where a party is a state official, and the state is the real party in interest. Morongo Band of Mission Indians v. California State Bd. of Equalization, 858 F.2d 1376, 1381, 1382 n.5 (9th Cir. 1988), cert. denied, Miller v. Morongo Band of Mission Indians, 488 U.S. 1006 (1989).

Ottawa Northern sued Reed to halt KDOT's participation in the trail construction. The allegations in the complaint are directed solely at KDOT's conduct, not Reed's. See Verified Complaint For Declaratory And Injunctive Relief (Doc. #1) filed August 21, 2023, ¶¶ 33 (KDOT party to Construction Agreement), 37 (KDOT's contractors and agents entered property in dispute), 53 (KDOT refused to cease and desist). Ottawa Northern does not disagree that the State of Kansas, through KDOT, is the real party of interest. The Court therefore finds that for purposes of determining diversity of citizenship, KDOT is the real party in interest. As a result, the Court lacks diversity jurisdiction over Ottawa Northern's claims against Reed in his official capacity and the claims against him may proceed only upon a finding of federal question jurisdiction.

B.    <u>Federal Question Jurisdiction</u>

Ottawa Northern alleges that federal question jurisdiction is present under the Interstate

Commerce Act, specifically 49 U.S.C. §§ 10501 and 10702, as well as 49 C.F.R. 213 <u>et seq.</u> and

214 <u>et seq.</u>[6]  Defendants argue that 49 U.S.C. §§ 10501 and 10702 do not confer federal question

jurisdiction because the statutes do not grant a private right of action and Ottawa Northern does

not claim to assert a private right of action under federal law.[7]  Ottawa Northern responds that

(1) for the Court to exercise federal question jurisdiction, under <u>Grable & Sons Metal Prod., Inc.</u>

<u>v. Darue Eng'g & Mfg.</u>, 545 U.S. 308 (2005), it is not necessary for federal law to create a private

right of action and (2) federal question jurisdiction is proper because its right to relief necessarily

depends on resolution of a substantial question of federal law.

---

[6]    Although the complaint alleges federal question jurisdiction pursuant to "49 U.S.C. 214 <u>et seq.</u>," Ottawa Northern's response clarifies that it only asserts jurisdiction pursuant to 49 C.F.R. 214.  <u>See</u> <u>Plaintiff's Response</u> (Doc. #37) at 6; <u>Complaint</u> (Doc. #1), ¶ 8.  Further, although Ottawa Northern did not list 49 C.F.R. 213 <u>et seq.</u> in its jurisdictional allegations, it refers to it elsewhere in its complaint.  <u>See</u> <u>Complaint</u> (Doc. #1), ¶¶ 15, 23, 74.  The Court thus assesses jurisdiction under both regulations.

[7]    Baldwin asserts that it brings both facial and factual attacks against Ottawa Northern's jurisdictional allegations.  <u>See</u> <u>Baldwin's Motion To Dismiss</u> (Doc. #18) at 3.  While Reed, Bettis Asphalt and BG Consultants do not directly address whether their attacks are merely facial, the Court interprets their arguments as both facial and factual.  None of the parties here submitted evidence on the issue of subject matter jurisdiction.  Defendants have submitted evidence that predecessors of Ottawa Northern effectively abandoned the subject rail line, including in the <u>Joint Motion For Leave To File Defendants' Joint Reply To Plaintiff's Response To Supplemental Memorandum In Support Of Defendants' Motions To Dismiss By Defendant Baldwin City, Kansas</u> (Doc. #62) filed November 14, 2023, which the Court contemporaneously sustains with this order.  <u>See also</u> <u>Defendants' Joint Supplemental Memorandum In Support Of Defendants' Motions To Dismiss</u> (Doc. #58) filed October 31, 2023; <u>Plaintiff's Response To Defendants' Joint Supplemental Memorandum In Support Of Defendants' Motions To Dismiss</u> (Doc. #61) filed November 7, 2023.  The Court, however, disregards the parties' briefing on the abandonment issue because it is not dispositive of the issue of subject matter jurisdiction and is more appropriately addressed at a later stage of litigation, through summary judgment or trial.

Sections 10501 and 10702 are both part of the Interstate Commerce Commission Termination Act of 1995 ("ICCTA"), codified at 49 U.S.C. § 10101 et seq. The ICCTA "abolished the [Interstate Commerce Commission], revised the Interstate Commerce Act, and transferred regulatory functions under that Act to the [Surface Transportation Board]." DHX, Inc. v. Surface Transp. Bd., 501 F.3d 1080, 1082 (9th Cir. 2007). Section 10501 grants the Surface Transportation Board exclusive jurisdiction over the following:

> (1)    transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
>
> (2)    the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State[.]

49 U.S.C. § 10501(b). Section 10702 states that a rail carrier providing transportation subject to the Surface Transportation Board "shall establish reasonable rates . . . and rules and practices on matters related to that transportation or service." 49 U.S.C. § 10702.

As an initial matter, the Court agrees that a private right of action is not required for the Court to exercise federal question jurisdiction. In Grable, the Supreme Court held that its earlier ruling in Merrell Dow Pharmaceuticals Inc. v. Thompson, 478 U.S. 804 (1986), should be read "as treating the absence of [a private cause of action] as evidence relevant to, but not dispositive of, the 'sensitive judgments about congressional intent' required by § 1331." Grable, 545 U.S. at 309 (citing Merrell Dow, 478 U.S. at 810); see also Nicodemus v. Union Pac. Corp., 440 F.3d 1227, 1237 (10th Cir. 2006) (federal cause of action not dispositive to federal question jurisdiction determination).

Because Ottawa Northern does not assert a private right of action under federal law, the

Court must consider whether resolution of its claims turn on a substantial question of federal law.[8]
City of Chicago v. Int'l Coll. of Surgeons, 522 U.S. 156, 164 (1997) (quoting Franchise Tax Bd.
of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 13 (1983) (case arises
under federal law when federal law creates cause of action or plaintiff's right to relief necessarily
depends on resolution of substantial question of federal law)).  When determining whether a non-
federal claim turns on a substantial question of federal law, courts must exercise restraint because
"determinations about federal jurisdiction require sensitive judgments about congressional intent,
judicial power, and the federal system."  Id. at 810.  Whether a case turns on a question of federal
law examines whether Congress evidenced an intent to provide a federal forum.  Id. at 812.

 With that context, the Court addresses Ottawa Northern's purported bases for federal
question jurisdiction with regard to each of its claims.

   1. Declaratory Judgment (Count II)

 Ottawa Northern seeks a declaratory judgment that (1) defendants must apply for and
obtain a ROE permit before entering its property and conducting construction activities and (2) that
the Trail Easement Agreement and Construction Agreement are invalid, unenforceable and
preempted by federal law.  Pursuant to the Declaratory Judgment Act, "[i]n a case of actual
controversy within its jurisdiction . . . upon the filing of an appropriate pleading, [the Court] may
declare the rights and other legal relations of any interested party seeking such declaration, whether
or not further relief is or could be sought."  28 U.S.C. § 2201.

---

[8] In considering whether an action arises under federal law, a defense which
implicates a federal question is not considered part of plaintiff's well-pleaded complaint.  See
Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003); Metro. Life Ins. Co. v. Taylor, 481 U.S.
58, 63 (1987).

The Court first addresses Ottawa Northern's request for a declaration that defendants must follow its ROE permit process.  Declaratory judgment actions are subject to the same mootness criteria that apply to any other lawsuit.  <u>Schell v. OXY USA Inc.</u>, 814 F.3d 1107, 1114 (10th Cir. 2016).  "In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties."  <u>See</u> <u>Hewitt v. Helms</u>, 482 U.S. 755, 761 (1987).  "Because mootness is a matter of jurisdiction, a court may raise the issue sua sponte."  <u>McClendon v. City of Albuquerque</u>, 100 F.3d 863, 867 (10th Cir. 1996).  According to defendants' <u>Statement On Status</u> (Doc. #45) filed October 13, 2023, defendants have applied for an ROE permit and supplied Ottawa Northern with the supporting paperwork.[9]  The Court therefore orders Ottawa Northern to show cause why its request for a declaration that defendants must follow its ROE permit process is not moot.[10]

The Court next turns to Ottawa Northern's request for a declaration that the Trail Easement Agreement and Construction Agreement are invalid, unenforceable and preempted by federal law. The complaint alleges that the Trail Easement Agreement "is preempted by federal law and is otherwise invalid and unenforceable because it interferes with Ottawa Northern's rail carrier operations, interferes with Ottawa Northern's compliance with federal law applicable to rail carriers and the subject property, and unreasonably burdens interstate commerce."  <u>Complaint</u> (Doc. #1), ¶ 31.  Ottawa Northern further alleges that 49 U.S.C. § 10501 preempts the Trail Easement Agreement and Construction Agreement because the agreements interfere with its rail

---

[9]     In a court's <u>sua sponte</u> review for lack of jurisdiction, it may refer to documents outside the pleadings.  <u>See</u> <u>Webb v. Harris</u>, No. 02-707, 2003 WL 27385430, at *2 (D.N.M. Mar. 25, 2003) (citing <u>Apple v. Glenn</u>, 183 F.3d 477, 479 (6th Cir. 1999)).

[10]    <u>See</u> <u>Warth v. Seldin</u>, 422 U.S. 490, 501 (1975) (for purposes of ruling on motion to dismiss, trial court may require plaintiff to supply "further particularized allegations of fact" to support standing).

carrier operations, prevent it from meeting statutory common carrier obligations, including those under 49 U.S.C. § 11101, prevent it from complying with 49 C.F.R. 213 and 214, have the effect of managing or governing the railroad and unreasonably burden interstate commerce.  Id. at ¶ 74.

Reading these allegations in the broader context of Ottawa Northern's complaint, the declaratory judgment action essentially seeks to resolve whether defendants may rely upon the easement agreements to establish a right to build on plaintiff's property.  If defendants brought coercive actions to claim their property rights in the easement, such an action would arise exclusively under state property and contract law.  Ottawa Northern's declaratory claim anticipates a federal defense to a state law cause of action, which is generally insufficient to establish federal question jurisdiction.

Ottawa Northern argues that because it seeks declaratory relief on federal preemption grounds, federal question jurisdiction is established.  While federal preemption is ordinarily raised as a defense to the allegations in a plaintiff's complaint, the Supreme Court has recognized an exception to this general rule, which is known as the complete preemption doctrine.  Caterpillar Inc. v. Williams, 482 U.S. 386, 393 (1987); Felix v. Lucent Techs., Inc., 387 F.3d 1146, 1154 (10th Cir. 2004).  Complete preemption is a specific situation in which a federal law, in this case the ICCTA, not only preempts a state or local act to some degree but also substitutes a federal cause of action for what would courts would typically construe as a state cause of action. Schmeling v. NORDAM, 97 F.3d 1336, 1342 (10th Cir. 1996); see also Planned Parenthood of Houston & Se. Tex. v. Sanchez, 403 F.3d 324, 332 (5th Cir. 2005) ("[T]he Supreme Court has repeatedly entertained federal preemption claims seeking injunctive and declaratory relief.").  In this case, if the ICCTA completely preempts Ottawa Northern's nominal state law claims as to the validity of the contracts, this Court has federal question jurisdiction over the declaratory claim.

Section 10501 of the ICCTA states that "the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law." 49 U.S.C. § 10501(b). Transportation is defined, in pertinent part, as "a locomotive . . . and services related to [the movement of passengers or property], including receipt, delivery, elevation, transfer in transit, refrigeration, icing, ventilation, storage, handling, and interchange of passengers and property." 49 U.S.C. § 10102(9). The preemptive effect of Section 10501 is thus limited to the statute's definition of "transportation" which "does not encompass everything touching on railroads." Emerson v. Kan. City S. Ry. Co., 503 F.3d 1126, 1129 (10th Cir. 2007); see also St. Charles Inv. Co. v. C.I.R., 232 F.3d 773, 776 (10th Cir. 2000) ("We will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs.").

The question then becomes whether Congress intended for the ICCTA to exert complete preemption in the context presented in Ottawa Northern's claim for declaratory relief.[11] While the Surface Transportation Board has explained that the ICCTA does *not* preempt typical crossing cases in which a railroad seeks to halt the construction of a private crossing over its rail lines, it has stated that easements across railroad property are preempted if they "hinder rail operations or pose safety risks." City of Lincoln v. Surface Transp. Bd., 414 F.3d 858, 863 (8th Cir. 2005); see also CSX Transportation, Inc.—Petition For Declaratory Order, STB Finance Docket No. 34662, 2005 WL 1024490, at *4 (S.T.B. May 3, 2005) (Section 10501 of the ICCTA preempts state or local actions that have effect of foreclosing or unduly restricting railroad's ability to conduct operations). Ottawa Northern has sufficiently pled that defendants' use of the easement

_____

[11]     Ottawa Northern has yet to articulate its specific preemption theory. For purposes of federal question jurisdiction, however, the Court interprets plaintiff's claim as one of complete preemption. The same reasoning applies, however, to other types of preemption.

purportedly granted by the Trail Easement Agreement and their construction work purportedly authorized by the Construction Agreement hinder rail operations and pose safety risks.[12]  Under federal pleading standards, these allegations establish federal question jurisdiction over Ottawa Northern's request for a declaration that federal law preempts the two agreements.[13]

For these reasons, the Court overrules defendants' motions to dismiss with respect to Ottawa Northern's Count II claim for declaratory judgment that federal law preempts the Trail Easement Agreement and the Construction Agreement.[14]  The Court further orders Ottawa Northern to show cause why its request for a declaration that defendants must follow its ROE permit process is not moot.

       2.  Trespass (Count III)

Ottawa Northern asserts federal question jurisdiction over its trespass claim under 49 U.S.C. §§ 10501 and 10702, as well as 49 C.F.R. 213 et seq. and 214 et seq.  Neither statute confers federal question jurisdiction over the trespass claim.  First, the ICCTA does not provide Ottawa

---

[12]    See Complaint (Doc. #1), ¶¶ 1 (unauthorized entry creates safety risks for workers), 39 (construction activities "could and would have negative impacts to Ottawa Northern's real estate, railroad operations and potentially the integrity and stability of the tracks themselves"), 42 (absence of onsite safety inspector) and 43 (construction plans do not account for safety, water diversion and drainage, stability and/or potential undercut damage to railroad structure).

[13]    To reach this conclusion, the Court does not have to define the exact contours of ICCTA preemption or decide whether the Trail Easement Agreement or Construction Agreement are in fact preempted.  At this stage, it is too soon to proceed further with analysis of Ottawa Northern's preemption claim.  Whether the agreements are valid remains an open question, outside the scope of the motions to dismiss.

[14]    To the extent that Ottawa Northern's request for a declaration that the Trail Easement Agreement and Construction Agreement are invalid and unenforceable rests on its argument that the agreements are not adequately supported by consideration, or any other arguments grounded in state-based contract law, the Court's exercise of jurisdiction will be limited to supplemental jurisdiction.  See Complaint (Doc. #1), ¶¶ 28–30 (arguing Trail Easement Agreement fails for lack of consideration because Baldwin failed to provide proof of payments required under Trail Easement Agreement), 73 (same).

Northern a private right of action for trespass. Section 11701 grants the Surface Transportation Board sole authority to enforce compliance with the Act and Section 11705, outlining the limits on actions by rail carriers, states only that rail carriers may take action to recover charges for transportation or other services provided. 49 U.S.C. §§ 11701, 11705.

Second, Ottawa Northern's trespass claim does not necessarily depend on resolution of a substantial question raised by either Section 10501 or 10702. Section 10501 grants the Surface Transportation Board exclusive jurisdiction over the enumerated conduct in that section and thus the record contains no evidence that Congress intended to provide a federal forum for Ottawa Northern's trespass claim under Section 10501. Similarly, Section 10702, which falls under the ICCTA's chapter relating to rail carrier rates and requires rail carriers to establish reasonable rules and practices related to transportation, does not indicate that Congress intended it to serve as a vehicle through which railway operators may bring suit against other parties to enforce the rules they establish pursuant to Section 10702. See Byrd v. BNSF Ry. Co., No. CIV-21-1058-F, 2022 WL 4388301, at *3 (W.D. Okla. Sept. 22, 2022) (majority of actions brought under Section 10702 concern challenges to tariffs and disputes between shippers and carriers). Further, because a claim for trespass involves subjects traditionally relegated to state law, the Court must restrain from exercising federal question jurisdiction in this instance. Nicodemus, 318 F.3d at 1238, opinion reinstated in part, 440 F.3d 1227 (10th Cir. 2006) (federalism principles determine court's exercise of jurisdiction over causes of action traditionally reserved to state courts).

Ottawa Northern also argues that federal question jurisdiction is proper under 49 C.F.R. 214 et seq. and 213 et seq. because the regulations prescribe minimum federal safety standards for railroad workplace safety and track safety and "do[] not restrict a railroad from adopting and enforcing additional or more stringent requirements not inconsistent" with each Part. 49 C.F.R.

213.1(a), 49 C.F.R. 214.1 (a).  Only a statute may confer jurisdiction; a regulation is ineffective because it does not reflect congressional authority.  See Kontrick v. Ryan, 540 U.S. 443, 452–53, (2004).  As a result, Ottawa Northern cannot successfully invoke the cited regulations as a basis for federal question jurisdiction over its trespass claim.  Even if it could, Ottawa Northern's right to relief does not necessarily depend on resolution of a substantial question of Parts 213 or 214. The fact that a state law cause of action—here, trespass—may require reference to a federal regulation is simply not enough.  Merrell Dow, 478 U.S. at 808–12.  The Court therefore finds that federal question jurisdiction is lacking for Ottawa Northern's trespass claim.

The Court's inquiry into its ability to exercise subject matter jurisdiction over Ottawa Northern's trespass claim, however, does not end there.  Under 28 U.S.C. § 1367(a), "district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  While the Court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction, that is not the case here.[15]  See United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd., 210 F.3d 1207, 1220 (10th Cir. 2000) (once federal question jurisdiction exists, within trial court discretion to exercise supplemental jurisdiction over state law claims that derive from common nucleus of facts); City of Chi. v. Int'l Coll. of Surgeons, 522 U.S. 156, 164–65 (1997) (federal and state law claims which arise from common nucleus of operative facts permit conclusion that entire action constitutes

---

[15]     Section 1367 provides that a district court may decline to exercise supplemental jurisdiction if: (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.  28 U.S.C. § 1367(c).

single case).  In deciding whether to exercise supplemental jurisdiction, a district court should consider "the nature and extent of pretrial proceedings, judicial economy, convenience, and [whether] fairness would be served by retaining jurisdiction."  Anglemyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir. 1995) (citing Thatcher Enter. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990)).

In this case, Ottawa Northern's trespass claim arises out of the same set of facts surrounding its declaratory claim based on federal preemption.  Its allegations that defendants entered its property without authorization and caused damage relate directly to the validity of the Trail Easement Agreement and Construction Agreement, the agreements which defendants argue authorize their entry and construction work.  Although Section 1367(b) lists some exceptions to supplemental jurisdiction, those exceptions do not apply here.  The Court exercises supplemental jurisdiction over plaintiff's trespass claim, and overrules defendants' motions to dismiss for lack of subject matter jurisdiction.

     C.     State Sovereign Immunity

As Secretary of KDOT, Reed raises the distinct argument that he is entitled to sovereign immunity under the Eleventh Amendment and that the Court should dismiss all claims against him.  Regarding the declaratory claim, Ottawa Northern responds that its claim is allowed under Ex Parte Young, which permits certain claims for prospective injunctive relief against state officers.  See Ex Parte Young, 209 U.S. 123 (1908).  Ottawa Northern does not address whether sovereign immunity bars its trespass claim.

The Eleventh Amendment bars claims for monetary relief brought against state officials in their official capacities.  Ellis v. Univ. of Kan. Med. Ctr., 163 F.3d 1186, 1196 (10th Cir. 1999).  In Ex Parte Young, the Supreme Court held that the Eleventh Amendment does not bar suits that

(1) seek only declaratory and injunctive relief rather than monetary damages for alleged violations of federal law and (2) are aimed against state officers acting in their official capacities. See Hill v. Kemp, 478 F.3d 1236, 1255–56 (10th Cir. 2007) (citing Ex Parte Young, 209 U.S. at 128).

As to plaintiff's trespass claim, on which Ottawa Northern seeks monetary damages, Reed is entitled to sovereign immunity. See Complaint (Doc. #1), ¶ 82 (costs to remediate property damage from alleged trespass exceed $75,000). The Court's decision to exercise supplemental jurisdiction over the trespass claim does not change this result. "[S]tate officials continue to be immunized from suit in federal court on alleged violations of state law brought under the federal courts' supplemental jurisdiction." Earles v. State Bd. of Certified Pub. Accts. of Louisiana, 139 F.3d 1033, 1039 (5th Cir. 1998) (collecting cases reaching same result). Thus, the limitations of Ex Parte Young require that the Court dismiss Ottawa Northern's trespass claim against Reed in his official capacity.

Ottawa Northern's declaratory claim, however, satisfies both elements of the Ex Parte Young exception and may proceed. First, the claim seeks only declaratory relief to remedy Reed's ongoing violations of federal law. See Ex Parte Young, 209 U.S. at 160 ("[T]he state has no power to impart [to a state official] any immunity from responsibility to the supreme authority of the United States."); see also City of Austin v. Paxton, 943 F.3d 993, 999 (5th Cir. 2019) (preemption allegation qualifies as ongoing violation of federal law for purposes of Ex Parte Young). Second, Ottawa Northern sued Reed in his official capacity as Secretary of KDOT. Thus, sovereign immunity does not bar Ottawa Northern's claim against Reed for declaratory relief that federal law preempts the Trail Easement Agreement and Construction Agreement.

For these reasons, the Court overrules Reed's motion to dismiss Ottawa Northern's Count II claim for declaratory relief and sustains the motion with regard to the Count III trespass claim.

D.     The KTCA Notice Requirement

Baldwin moves to dismiss because Ottawa Northern did not comply with the KTCA notice requirement.  See K.S.A. § 12-105b(d).  The notice requirement states that "[a]ny person having a claim against a municipality . . . which could give rise to an action brought under the Kansas tort claims act shall file a written notice" before commencing such action.  K.S.A. § 12-105b(d). Claimants must file notice "with the clerk or governing body of the municipality" and must wait to file their suit until after they have received notice from the municipality that it has been denied or until 120 days have passed.  See id.  This notice requirement is a condition precedent to suit against a municipality and, under Rule 9(c), plaintiffs must allege in their complaints that they have provided the requisite notice.  See Fed. R. Civ. P. 9(c) (pleading must "allege generally that all conditions precedent have occurred or been performed").  Thus, under Kansas law, a court lacks subject matter jurisdiction over a plaintiff's tort claims when plaintiff fails to plead that they have complied with K.S.A. § 12-105b(d).  See, e.g., Humes v. Cummings, No. 18-2123-DDC-GEB, 2018 WL 4600717, at *4 (D. Kan. Sept. 25, 2018); see also Shrum v. Cooke, No. 20-1314-JWB, 2021 WL 3051891, at *6 (D. Kan. 2021 July 20, 2021).

Ottawa Northern first argues that with regard to its declaratory judgment claim, it need not comply with the KTCA because its claim is not for money damages and the KTCA's definition of "claim" is limited to claims for money damages.  See K.S.A. § 12-105a(c) (defining "claim" as "the document relating to and stating an amount owing to the claimant by a municipality for material or service furnished to the municipality, or some action taken by or for the municipality and for which the municipality may or may not be responsible").  Because the KTCA notice requirement applies only to tort claims, the Court agrees with Ottawa Northern that notice was not required for the declaratory action.  See Johnson v. Bd. of Cnty. Comm'rs of Pratt Cnty., 259 Kan.

305, 306, 913 P.2d 119, 123 (1996).  The Court thus declines to dismiss the declaratory claim against Baldwin for non-compliance.

As to its trespass claim, Ottawa Northern argues that it substantially complied with the notice requirement because (1) it notified Baldwin's contractors on July 5, 2023 that they could not enter the property without prior approval and (2) its counsel has had "numerous communications with the City's counsel regarding [the alleged trespass] and the validity of the easement."  Plaintiff's Response (Doc. #37) at 10–11.  Ottawa Northern further argues that providing formal notice to Baldwin is "nothing more than a technicality brought on in an attempt to delay adjudication of the trespass claim on the merits."  Id. at 11.  Baldwin replies that (1) Ottawa Northern emailed KDOT contractors, not Baldwin itself, on July 5, 2023, (2) regardless of whose contractors received the emails dated July 5, 2023, KTCA requires that the clerk or governing body of the municipality receive notice and that did not occur here and (3) that even if the Court construes the notice from July 5, 2023 as substantial compliance with the KTCA notice requirement, Ottawa Northern did not wait 120 days to file this suit.  See K.S.A. § 12-105b(d)(1).

Baldwin submits the affidavit of Amara Packard, City Clerk for the City of Baldwin City, Kansas, who attests that she has not received notice of Ottawa Northern's claims and Baldwin's governing body has not notified her that it has received notice.  See Affidavit Of Amara Packard (Doc. #18) at 14.  Ottawa Northern has not met the requirements for notice under the KTCA and its trespass claim against Baldwin cannot proceed.  See Myers, 280 Kan. at 877, 127 P.3d at 325 (service of notice on anyone who is not clerk or governing body of municipality violates clear language of K.S.A. § 12–105b).

For these reasons, the Court overrules Baldwin's motion to dismiss Ottawa Northern's Count II declaratory claim and sustains the motion with regard to Ottawa Northern's Count III

trespass claim.

    E.   <u>Failure To Comply With K.S.A. § 17-76,126 Registration Requirement</u>

Because Ottawa Northern, a Mississippi LLC, has not alleged that it is registered to do business in the State of Kansas, defendants argue that it has not complied with K.S.A. § 17-76,126 and cannot maintain suit in Kansas.  Section 17-76,126 provides that an out-of-state LLC "doing business in the State of Kansas may not maintain any action" here "until it has registered in this state" and paid all fees due for having done businesses in Kansas without registering to do so.

BG Consultants notes, however, that Ottawa Northern has applied for Foreign Limited Liability Company status with the Kansas Secretary of State, and its application was pending as of September 19, 2023.  <u>BG Consultants' Motion To Dismiss</u> (Doc. #24) at 2 n.1.  So long as it complies with registration requirements after filing suit, noncompliance at the outset of an action is not fatal to plaintiff's claim.  <u>See</u> <u>Haile Grp., LLC v. City of Lenexa</u>, 242 P.3d 1281 (Kan. Ct. App. 2010) (citing <u>Corco, Inc. v. Ledar Transport, Inc.</u>, 24 Kan. App. 2d 377, 378–79, 946 P.2d 1009 (1997)).  The Court therefore overrules defendants' motions on this ground.[16]

**I.**    **Failure To State A Claim Upon Which Relief May Be Granted**

Defendants argue that the Court should dismiss the complaint for failure to state a claim on which relief can be granted because it consists of only speculative and conclusory assertions devoid of factual support.

    A.    <u>Declaratory Judgment (Count II)</u>

Defendants do not specify which of their Rule 12(b)(6) arguments correspond with particular claims by Ottawa Northern.  The Court, however, interprets their arguments as follows: the complaint (1) contains no specific factual allegations as to how defendants' actions have

---

[16]    Should the application be denied, defendants are free to renew their motion.

affected Ottawa Northern's operation, (2) fails to state whether Ottawa Northern presently operates on the tracks at issue and (3) fails to allege actual harm to Ottawa Northern.

The party claiming preemption bears the burden of showing with specificity that Congress intended to preempt state or local action. See Mount Olivet Cemetery Ass'n v. Salt Lake City, 164 F.3d 480, 489 (10th Cir. 1998). Ottawa Northern has met this burden for the reasons stated in Section I.B.2. of this order. The Court therefore overrules the motions to dismiss Ottawa Northern's claim for declaratory relief for failure to state a claim.

B.    Trespass (Count III)[17]

In Count III, Ottawa Northern claims trespass to land under Kansas law. The only trespass claims which remain in the case are Ottawa Northern's claims against Bettis Asphalt and BG Consultants. Bettis Asphalt and BG Consultants assert that Ottawa Northern's trespass claim fails to meet the Iqbal and Twombly pleading standards because Ottawa Northern has not alleged specific facts which allow the Court to infer that plaintiff's trespass claim is plausible on its face.

In determining the plausibility of a claim, the Court looks to the elements of the cause of action, "keeping in mind that the Rule 12(b)(6) standard [does not] require a plaintiff to set forth a prima facie case for each element." Safe Streets Alliance v. Hickenlooper, 859 F.3d 865, 878 (10th Cir. 2017). A "claim is facially plausible if the plaintiff has pled 'factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). Under Kansas law, a

---

[17]    Bettis Asphalt and BG Consultants additionally incorporate by reference the Rule 12(b)(6) arguments for dismissal by Reed and Baldwin. Given that Ottawa Northern elected to file a single response to the four motions to dismiss, it appears that Ottawa Northern was able to adequately respond to all arguments presented by defendants. See Plaintiff's Response (Doc. #37). The Court consequently determines the Rule 12(b)(6) issues on the incorporated arguments as well as those raised independently by Bettis Asphalt and BG Consultants.

trespasser is a person who intentionally enters or remains upon land in the possession of another without a privilege to do so.  Riddle Quarries, Inc. v. Thompson, 177 Kan. 307, 311, 279 P.2d 266 (1955).  In a trespass action, damages may be awarded for any injury which is the immediate consequence of the trespass.  Mackey v. Board of County Commissioners of Johnson County, Kansas, 185 Kan. 139, 147, 341 P.2d 1050 (1959).

Count III alleges that (1) Ottawa Northern owns the property in dispute, (2) Ottawa Northern has the right to control access and construction activity thereon, (3) defendants intentionally entered upon the property without permission and authorization and (4) as a direct and proximate result, Ottawa Northern's property suffered damage because of construction activities such as boring, trenching, digging and the like.  See Complaint (Doc. #1) at 15. Assuming that these well-pleaded facts are true, Ottawa Northern has sufficiently alleged a possessory interest in the disputed property, that Bettis Asphalt and BG Consultants intentionally entered and remained upon the land and that Ottawa Northern did not consent to their entry.

Accordingly, the Court overrules the motions to dismiss Ottawa Northern's Count III trespass claim.

**IT IS THEREFORE ORDERED** that the Motion To Dismiss Of Defendant Calvin Reed In His Capacity As Secretary Of The Kansas Department Of Transportation (Doc. #13) filed September 11, 2023 and Defendant, The City Of Baldwin City, Kansas' Motion To Dismiss (Doc. #18) filed September 15, 2023 are **OVERRULED as to Count II (Declaratory Judgment) and SUSTAINED as to Count III (Trespass Under Kansas Law).**

**IT IS FURTHER ORDERED** that the Motion To Dismiss For Failure To State A Claim By Defendant Bettis Asphalt & Construction, Inc. (Doc. #21) filed September 19, 2023 and the Motion To Dismiss For Lack Of Jurisdiction And Memorandum In Support (Doc. #24) filed

September 19, 2023 are **OVERRULED**.

**IT IS FURTHER ORDERED** that because the complaint fails to allege facts sufficient to support diversity jurisdiction, the Court grants plaintiff until 5:00 PM on November 22, 2023, to file an amended complaint which properly alleges subject matter jurisdiction.

**IT IS FURTHER ORDERED** that plaintiff show cause in writing by 5:00 PM on November 22, 2023 why its request for a declaration that defendants must follow its Right of Entry permit process is not moot.

Dated this 16th day of November, 2023 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge