IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| OTTAWA NORTHERN RAILROAD, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 23-2363-KHV-ADM |
| ) | |
| CITY OF BALDWIN CITY, KANSAS, et al., ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

This case involves a dispute over real property rights that plaintiff Ottawa Northern Railroad, LLC ("Ottawa Northern") allegedly acquired when it purchased the assets of Midland Railway Historical Association ("Midland Railway")—specifically, a railroad right-of-way running from Ottawa to Baldwin City, Kansas. Ottawa Northern discovered that a walking trail was being constructed on a portion of the property, and it filed this lawsuit seeking to enjoin the City of Baldwin City, Kansas ("Baldwin City"), Calvin Reed in his capacity as Secretary of the Kansas Department of Transportation ("KDOT"), and their contractors from further trail construction. Defendants contend they are authorized to enter the right-of-way and construct the walking trail pursuant to agreements that pre-dated Ottawa Northern's ownership of the property. This matter now comes before the court on Baldwin City's Motion for Leave to File First Amended Answer and Counterclaims. (ECF 108.) By way of this motion, Baldwin City seeks to add counterclaims for declaratory judgment and quiet title arising from an alleged 1985 abandonment of the subject rail line that it contends resulted in the railroad right-of-way reverting back to Baldwin City. (*See* ECF 58, at 8.) For the reasons explained below, the court finds no valid grounds to deny leave to amend, so Baldwin City's motion is granted.

**I.      BACKGROUND**

According to the record in this case, the following facts appear to be largely undisputed. Ottawa Northern alleges it acquired the railroad right-of-way at issue when it purchased Midland Railway's assets on March 9, 2023. Years before this, Baldwin City began planning to construct a walking trail on the railroad right-of-way as part of its "Safe Routes to School" initiative. In particular, defendants contend the walking trail was authorized via a 2018 Trail Easement Agreement that Midland Railway granted to Baldwin City and a 2022 Construction Agreement between Baldwin City, Midland Railway, and KDOT. The walking trail on the railroad right-of-way was intended to facilitate access to the "Elm Street Crossing," which provides one of the primary pedestrian routes for elementary school children to access the school complex, by creating a safe route from populated areas in the southern portion of Baldwin City to get to the Elm Street Crossing. (ECF 25, at 3-5.) Defendants began construction on the walking trail on April 4, 2023, which was only about a month after Ottawa Northern purchased Midland Railway's assets. (*Id*. at 5.) The walking trail is only about a quarter mile long, is approximately 30-40 feet from the railroad tracks, and is in an area where the railroad tracks are seldom used—so seldom used, in fact, that Ottawa Northern did not discover the trail was being constructed until three months later, on July 5, 2023. (*Id*. at 5-6.)

Once Ottawa Northern discovered this, it demanded that the defendants cease and desist their unauthorized entry onto the right-of-way, trespass, and construction activities. But the defendants refused to do so. Ottawa Northern also contacted the Douglas County Sheriff's Department, which refused to stop the alleged trespass because it was a civil matter. So, Ottawa Northern filed this action for declaratory and injunctive relief against Baldwin City, KDOT, and the contractors working on the project, defendants J. Warren Co., Inc., Bettis Asphalt &

2

Construction, Inc., and B.G. Consultants, Inc.  Ottawa Northern's complaint asserted claims for (Count I) a preliminary injunction enjoining defendants from further unauthorized entry, trespass, and construction activities on the property, and requiring defendants to immediately remove their construction equipment and bear the costs of Ottawa Northern's removal of all infrastructure and utilities installed without authorization; (Count II) a declaratory judgment that the Trail Easement Agreement and Construction Agreement are preempted by federal law, and are otherwise invalid and unenforceable; and (Count III) trespass for allegedly entering upon Ottawa Northern's property without permission and authorization.  (ECF 1.)  Ottawa Northern initially moved for a preliminary injunction, but, after full briefing and a hearing, it withdrew the motion.  (ECF 5, 31, 40, 56.)  Baldwin City and KDOT filed motions to dismiss, which the court granted with respect to Ottawa Northern's trespass claims, but denied in all other respects.  (ECF 63.)

In the midst of the above briefing, defendants filed a supplemental memorandum in support of their motions to dismiss in which they raised the issue that the subject rail line was abandoned in 1985.  (ECF 58.)  According to defendants, in 1984, the Atchison, Topeka & Santa Fe Railway Company ("ATSF") filed an application with the Interstate Commerce Commission ("ICC") to abandon the line.  In 1985, the ICC entered a Certificate and Decision allowing abandonment of the line.  In 1987, the ATSF quitclaimed its rights, title, and interest in the railroad line to Santa Fe Trails Historical Society ("SFTHS") and Midland Railway, and tourist excursions trains began running on the line.  In 1995, SFTHS quitclaimed its interest in the line to Midland Railway.  In 2019, Midland Railway subsidiary Leavenworth, Lawrence and Galveston Railroad Company d/b/a Baldwin City & Southern Railroad Company ("LL&G/BCSR") filed papers with the Surface Transportation Board ("STB") in which it claimed that ATSF had abandoned the line before Midland Railway purchased it.  (*Id.* at 3-4.)  And, in 2023, Ottawa Northern again filed papers

with the STB in which it acknowledged that ATSF had abandoned the line.  (*Id.* at 4.)  According to defendants, ATSF's 1985 abandonment of the line raises significant and relevant questions about the issues in the case, such as Ottawa Northern's preemption and jurisdictional claims, as well as its standing, title, and ownership of the real property at issue.

When the court ruled Baldwin City and KDOT's motions to dismiss, it also granted Ottawa Northern leave to amend its complaint to cure deficiencies in the complaint's jurisdictional allegations.  (ECF 63, at 9.)  Ottawa Northern then filed the operative first amended complaint.  (ECF 68.)  When Baldwin City filed its answer on December 20, it included an affirmative defense that Ottawa Northern's claims "are barred by the abandonment of the rail line at issue."  (ECF 76, at 8.)

On January 11, 2024, the court held a scheduling conference and entered a scheduling order.  The scheduling order set a March 7 deadline for motions to amend, a May 17 discovery completion deadline, a pretrial conference on June 11, a July 3 dispositive-motion deadline, and a trial setting of January 6, 2025.  (ECF 85.)

Baldwin City filed the current motion to amend on March 7.  By way of this motion, it seeks leave to assert a counterclaim seeking a declaratory judgment that the rail line at issue was abandoned in 1985.  In addition, Baldwin City seeks an order quieting title to the abandoned railroad right-of-way.  Baldwin City alleges that it owns the depot and the right-of-way adjacent to the rail line; that a railroad generally acquires only an easement for a right-of-way on a strip of land, which reverts to the original landowner or its successors upon abandonment by the railroad; and that Baldwin City has a reversionary interest in the abandoned railroad right-of-way.  Ottawa Northern opposes the proposed amendment on the grounds that (1) Baldwin City unduly delayed in asserting its counterclaim and (2) the amendment is futile.

## II. LEGAL STANDARD

Once a party has filed a responsive pleading, the opposing party may amend its pleading only with the opposing party's written consent or the court's leave, which "shall be freely given when justice requires." FED. R. CIV. P. 15(a)(2).  The court may refuse leave to amend only on "a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Wilkerson v. Shinseki*, 606 F.3d 1256, 1267 (10th Cir. 2010); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) (same).  The purpose of the rule "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *SCO Grp., Inc. v. Int'l Bus. Machines Corp.*, 879 F.3d 1062, 1085 (10th Cir. 2018) (internal quotations omitted).

Practically speaking, the party opposing a motion to amend generally bears the burden to demonstrate why the amendment should not be permitted.  *See Wilkerson*, 606 F.3d at 1267 (stating that in the absence of such a showing, amendment should be allowed).  Whether to grant a motion to amend is within the court's sound discretion.  *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1240 (10th Cir. 2014).

## III. ANALYSIS

As mentioned above, Ottawa Northern opposes amendment on two grounds: (1) undue delay and (2) futility.  The court will address each argument in turn.

### A. Ottawa Northern Has Not Shown Undue Delay

Ottawa Northern argues the court should deny leave to amend on the grounds that Baldwin City unduly delayed in requesting leave to assert its proposed counterclaims.  (ECF 117, at 11.)  Ottawa Northern points out that Baldwin City filed an answer on December 20 in which it asserted abandonment as an affirmative defense but did not assert any counterclaim, and that Baldwin City

5

then waited until the March 7 amendment deadline to file its motion seeking leave to assert counterclaims based on abandonment, even though it "was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend, and has no adequate explanation for the delay." (ECF 117, at 11 (quoting *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1206 (10th Cir. 2006).)  But delay alone is not enough to deny a motion to amend.  *Minter*, 451 F.3d at 1205.  At some point, delay becomes undue when it places an unwarranted burden on the court or when it becomes prejudicial by placing an unfair burden on the opposing party.  *Id.*

Here, Baldwin City did not unduly delay in seeking to amend its pleading.  Baldwin City's motion complied with the scheduling-order deadline for motions to amend.  And Ottawa Northern has not advanced any argument that Baldwin City's delay in filing the motion was *undue*.  The alleged 1985 abandonment of the rail line by ATSF has long been an issue in the case.  Defendants first raised this issue in supplemental briefing on their motions to dismiss (in a relatively developed fashion, no less) and then Baldwin City's answer included an affirmative defense that Ottawa Northern's claims "are barred by the abandonment of the rail line at issue." (ECF 76, at 8.)  So Ottawa Northern has been aware of Baldwin City's assertion of abandonment during the entire discovery period.  Ottawa Northern has not articulated what discovery it thinks it will need but will not have the opportunity to develop due to Baldwin City's alleged "delay" in asserting a counterclaim (versus merely an affirmative defense) based on abandonment.  Moreover, Ottawa Northern has not shown that the timing of Baldwin City's amendment will unfairly impact the court's schedule for resolving this action or unfairly burden Ottawa Northern.  Under these circumstances, any delay in asserting the counterclaims is not undue so as to warrant denying leave to amend.

6

### B. The Proposed Amendments Are Not Futile

"A proposed amendment is futile if the [pleading], as amended, would be subject to dismissal." *Jefferson Cty. Sch. Dist. No. R-1 v. Moody's Inv'r's Servs., Inc.*, 175 F.3d 848, 859 (10th Cir. 1999). In the context of futility, the court often considers whether the amended complaint could withstand a Rule 12(b)(6) motion to dismiss. *See* 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1487 (3d ed.) (collecting cases). To withstand dismissal under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In analyzing whether dismissal is appropriate, the court must "accept the facts alleged in the complaint as true and view them in the light most favorable to the plaintiff." *Mayfield v. Bethards*, 826 F.3d 1252, 1255 (10th Cir. 2016). That said, the court is not necessarily limited to a Rule 12(b)(6) analysis when considering futility. *See Watson ex rel. Watson v. Beckel*, 242 F.3d 1237, 1239-40 (10th Cir. 2001) ("A proposed amendment is futile if the complaint, as amended, would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment.").

Ottawa Northern raises multiple futility arguments against the proposed amendments, but none points to a pleading deficiency that goes to an essential element of the counterclaim. Rather, Ottawa Northern generally denies facts alleged in support of Baldwin City's counterclaims and/or relies on facts it has learned in discovery. These factual disputes are more appropriately resolved on summary judgment or at trial. They do not establish that Baldwin City's proposed counterclaims are subject to dismissal at the pleading stage. "Generally, the court declines to resolve factual disputes on a motion to amend given the liberal amendment rules." *Pipeline Prods.,*

7

*Inc. v. Madison Cos., LLC*, No. 15-4890-KHV-ADM, 2019 WL 4060835, at *8 (D. Kan. Aug. 28, 2019) (granting motion to amend to add successor liability claim because opponent's arguments were "more in the vein of a denial of the facts alleged in support of Pipeline's successor liability claim" and did not establish that such claim was subject to dismissal at the pleading stage); *see also Indep. Country Club v. Magellan Pipeline Co., LP*, No. 07-1196-MLB, 2008 WL 750526, at *3 (D. Kan. Mar. 18, 2008) ("Because the court does not resolve factual disputes when considering a motion to amend, defendant has failed to carry its burden of showing that the addition of a claim for punitive damages is a futile act.").

First, Ottawa Northern argues that Baldwin City's quiet-title and declaratory-judgment counterclaims are time-barred because they are subject to a 15-year statute of limitations that expired many years ago. *See* KAN. STAT. ANN. § 60-507 ("No action shall be maintained for the recovery of real property or for the determination of any adverse claim or interest therein, not provided for in this article, after fifteen (15) years from the time the cause of action accrued."). In response, Baldwin City argues that Ottawa Northern cannot acquire rights "in public lands by adverse possession or any statute of limitation." (ECF 120, at 2 (quoting *Gauger v. State*, 815 P.2d 501, 503 (Kan. 1991)). But even if a 15-year statute of limitations applies, the statute of limitations is an affirmative defense on which the defendant has the burden of proof. *Slayden v. Sixta*, 825 P.2d 119, 122 (1992). Ottawa Northern's perfunctory argument that Baldwin City's "proposed counterclaims accrued in 1985 when the City alleges the right-of-way was abandoned" (ECF 117, at 5) is insufficient to meet its burden proof at this procedural juncture. A person may bring a quiet title action under Kansas law "against any person who claims an estate or interest therein adverse to him or her, for the purpose of determining such adverse claim." KAN. STAT. ANN. § 60-1002(a). By its plain terms, the language of this statute suggests that no such cause of

action accrues unless and until someone claims an adverse interest. *Cf. Leathers v. Leathers*, 856 F.3d 729, 747-48 (10th Cir. 2017) (explaining the meaning of this language in the context of standing). Based on the record currently before the court, it appears that Baldwin City's quiet title claim accrued when Ottawa Northern first claimed an adverse interest that would be sufficient to oust Baldwin City from the railroad right-of-way, which was in July of 2023 and not in 1985 when the right-of-way was allegedly abandoned.

Second, Ottawa Northern argues the proposed amendment is futile because there was no abandonment of the right-of-way for railroad use. Ottawa Northern points to documents that allegedly show that Midland Railway obtained permission from the Kansas Corporation Commission ("KCC") in 1986 to continue operating as a common carrier of passengers on the line, in 1987 to begin operating tourist trains, and in 1988 to extend passenger operations. (ECF 117, at 5-7 (citing Exs. A-C).) In response, Baldwin City contends this argument is inconsistent with Ottawa Northern and its predecessors' previous filings and admissions to the STB that the line was abandoned. (ECF 120, at 2-3 & nn.1, 2.) Baldwin City also says that Ottawa Northern's argument on this point is based on documents that Ottawa Northern only recently produced and that Baldwin City "has not had the opportunity to investigate fully issues related to the KCC's jurisdiction over the line." (*Id.* at 3 n.1.)

Resolution of the issue of abandonment is premature at this procedural juncture, as it is riddled with factual and legal disputes. For one, the question of whether there was an abandonment is a question of fact that turns on intent. *Gauger v. State*, 815 P.2d 501, 503 (Kan. 1991) ("Whether an abandonment has occurred is a question of intent. To constitute abandonment of a railroad right-of-way there must be a uniting of intent to renounce all interest in the right-of-way with a clear and unmistakable act to carry out that intent."). Baldwin City is entitled to a full and fair

opportunity to conduct discovery regarding this issue so that it can be resolved on a fully developed factual record, at a later stage of the case. This is not a question for the court to decide at this procedural posture on a limited record lacking a comprehensive view of the facts.

Third, Ottawa Northern argues Baldwin City's proposed quiet title counterclaim seeking to divest Ottawa Northern of the right-of-way "is categorically preempted" and thus futile because the STB has exclusive jurisdiction over rail transportation, including the acquisition, operation, and abandonment of railways. Ottawa Northern argues that, in 2023, the STB granted Ottawa Northern the authority to acquire the line from Midland Railway and to operate the line as a common carrier. (ECF 117, at 7-9.) In response, Baldwin City points out that this argument contradicts Ottawa Northern's exhibits to its response, which are KCC orders stating that the KCC "retains jurisdiction over the subject matter and parties herein" and do not indicate that its jurisdiction was ever terminated. (ECF 120, at 3-4 (citing ECF 117-1, 117-2, 117-3).) Baldwin City admits, however, that "whether the KCC has ongoing jurisdiction remains unclear." (*Id*. at 3.) This jurisdictional argument is another argument that should be fleshed out in summary judgment or other proceedings. Once again, based on the limited arguments and materials provided by the parties at this procedural juncture, the court cannot finally resolve the issue of whether the STB or the KCC has jurisdiction.

Fourth, Ottawa Northern argues that the STB's 2023 decision granting Ottawa Northern authority to acquire the line from Midland Railway and to operate as the common carrier over the line cannot be challenged in this court. Ottawa Northern points out that, under the Hobbs Act, the court of appeals "has *exclusive jurisdiction* to enjoin, set aside, suspend (in whole or in part), or to determine the validity of . . . (5) all rules, regulations, or final orders of the Surface Transportation Board made reviewable by section 2321 of this title" and Baldwin City failed to file a petition for

10

review in the court of appeals within 60 days after entry of the STB's final order. (ECF 117, at 9-10 (quoting 28 U.S.C. § 2342(5)). Ottawa Northern contends that, because Baldwin City's proposed counterclaims are a collateral attack on the STB's decision authorizing Ottawa Northern to acquire and operate the line as a common carrier, and Baldwin City failed to file a petition for review in the Tenth Circuit, Baldwin City waived any challenge seeking to enjoin or suspend the STB's order. (ECF 117, at 10.) Baldwin City responds that Ottawa Northern's argument fails if the court finds that (1) the line was abandoned in 1985 and/or (2) the KCC retains ongoing jurisdiction over the line. Baldwin City also points out that that Ottawa Northern's "newly discovered and disclosed KCC information contradicts its previous position that this Court had exclusive jurisdiction to adjudicate the parties' disputes." (ECF 120, at 5.) The court agrees. Whether there was an abandonment in 1985 and/or whether the KCC or STB has jurisdiction over the line will determine whether this court has jurisdiction over the parties' dispute. Thus, for essentially the same reasons explained above, the jurisdictional issues under the Hobbs Act are more appropriately addressed at a later stage in this case. Accordingly, Ottawa Northern may reassert this argument based on the merits after the parties have had a full and fair opportunity to conduct discovery.

For all of these the reasons, the court cannot say at this procedural juncture that Baldwin City's proposed counterclaims would be subject to dismissal and are therefore futile.

## IV. CONCLUSION

The interests of justice require allowing Baldwin City to file its First Amended Answer to Ottawa Northern's First Amended Complaint and Counterclaims. The record does not establish undue delay, undue prejudice, futility of the amendments, or any other grounds on which the court

11

could properly deny amendment. Accordingly, the court grants Baldwin City's motion to amend given the liberal policy in favor of allowing amendments to the pleadings.

**IT IS THEREFORE ORDERED** that Baldwin City's Motion to Amend Answer (ECF 108) is granted. Baldwin City must file its First Amended Answer as a separate docket entry within two business days from the date of this order.

**IT IS SO ORDERED.**

Dated April 30, 2024, at Kansas City, Kansas.

s/ Angel D. Mitchell  
Angel D. Mitchell  
U.S. Magistrate Judge